UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO D. MOORE,

        Petitioner,

  v.                                          Case No. 25-cv-155-pp

UNITED STATES OF AMERICA,

        Respondent.

**ORDER DENYING AS MOOT PETITIONER'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE UNDER 28 U.S.C. §2255, DENYING CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

On January 30, 2025, petitioner Antonio D. Moore filed a motion to vacate, set aside or correct sentence under 28 U.S.C. §2255, challenging his conviction in United States v. Moore, Case No. 22-cr-72 (E.D. Wis.). Dkt. No. 1. At the same time, the petitioner filed a motion to proceed without prepaying the filing fee. Dkt. No. 2. This order screens the motion under Rule 4 of the Rules Governing Section 2255 Cases. Because it plainly appears from the face of the petition that the petitioner is not entitled to relief, the court will deny the motion and dismiss this case.

**I.    Petitioner's Motion for Leave to Proceed Without Prepaying the Filing Fee**

A petitioner in a §2255 proceeding is not required to pay a filing fee because courts consider a §2255 motion as a "continuation of the criminal

1

case" rather than an independent lawsuit. See Advisory Committee's Notes to Rule 3, Rules Governing §2255 Proceedings. Because the petitioner was not required to pay a filing fee, the court will deny as moot the petitioner's motion for leave to proceed without prepaying the filing fee.

**II.     Background**

The grand jury returned a six-count indictment alleging that the petitioner violated 18 U.S.C. §§1951(a), 924(c)(1)(A)(ii), 922(g)(1), 924(a)((2) and 2(a). Case No. 22-cr-72, Criminal Case,[1] Dkt. No. 7. On July 6, 2023, the petitioner pled guilty to three counts of obstruction of interstate commerce by robbery under 18 U.S.C. §1951(a) and one count of brandishing a firearm during and in relation to a crime of violence under 18 U.S.C. §924(c)(1)(A)(ii). Criminal Case, Dkt. Nos. 69, 71. The government agreed to dismiss the two remaining counts. Criminal Case, Dkt. No. 69 at 5. The plea agreement explained that Count Three (the §924(c) charge) carried a mandatory minimum of seven years (which must run consecutive to any other sentence) and a maximum of life in prison. Id. at 4-5. In the agreement, the petitioner waived his right to "appeal his conviction or sentence in this case and further waive[d] his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255." Id. at 12. He specifically waived his right to bring a claim that the statutes or sentencing guidelines under which he was convicted or sentenced

---

[1] The court will cite to documents filed in this *habeas* case (25-cv-155) as "Dkt. No." The court will cite to documents filed in the petitioner's underlying criminal case (22-cr-72) as "Criminal Case, Dkt. No."

are unconstitutional, and that his conduct did not fall within the scope of the statutes or sentencing guidelines. Id. He acknowledged that he was pleading guilty freely and voluntarily because he was, in fact, guilty. Id. at 14. He also signed the acknowledgment that he had discussed all aspects of the case with his attorney and that he was satisfied that his attorney provided effective assistance of counsel. Id. at 15.

The court sentenced the petitioner on October 31, 2023, to 120 months imprisonment. Criminal Case, Dkt. No. 78. The court entered judgment the next day. Id., Dkt. No. 79. The petitioner's attorney filed a letter on November 9, 2023, indicating that the petitioner asked to inform the court that he did not wish to appeal. Id., Dkt. No. 81.

On October 29, 2024, the court received a letter titled "Pro Se Motion to Appeal Conviction." Id., Dkt. No. 112. The petitioner said that he was in restricted housing, that he was being transferred "anyday now" and couldn't "get [his] property or much to go on At the moment" but wanted to assert his right to appeal before the expiration of his one-year deadline. Id. The clerk's office docketed the letter as a notice of appeal, but the petitioner's deadline for filing a notice of appeal had expired on November 15, 2023. The parties filed with the Seventh Circuit Court of Appeals a joint motion to remand, asking the appellate court to remand the letter for docketing as a motion under §2255. United States v. Moore, Appeal No. No. 24-2951 (7th Cir. 2025), Dkt. No. 16. The Seventh Circuit granted the joint motion to remand with instructions to re-

3

docket the motion as a petition for post-conviction relief. Criminal Case, Dkt. No. 126.

III. **Petitioner's Motion to Vacate, Set Aside or Correct Sentence.**

In a §2255 proceeding, the court must first review—or "screen"—the motion. Rule 4 of the Rules Governing Section 2255 Proceedings provides that:

> [i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A petitioner seeking relief under §2255 must allege either that his sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers whether the petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period.

The petitioner raises four grounds in his motion. First, he argues that his counsel was ineffective in failing to file motions or otherwise argue "for the mandatory minimum" or "illegal search and seizures pertaining to evidence obtained by the government to be used against [the petitioner]." Dkt. No. 1 at 6-7. The petitioner argues that he told his attorney to file multiple motions and that he "informed them about brandishing an 924c is not a crime of violence."

Id. at 7. Second, the petitioner argues that a Hobbs Act robbery is not a crime of violence. Id. Third, the petitioner asserts that §924(c) is unconstitutionally vague. Id. at 8. Finally, the petitioner argues that the charges never affected interstate commerce. Id.

The petitioner's request for post-conviction relief faces several obstacles. He has procedurally defaulted three of his four claims. More important, in his plea agreement, he waived his right to appeal and his right to file a §2255 motion in exchange for the government's concessions. Criminal Case, Dkt. No. 69 at 12. The petitioner does not challenge the voluntary nature of the plea. Finally, the only possible claim he could raise in this motion—his claim regarding counsel's performance at sentencing—lacks merit.

    A.    <u>Procedural Default</u>

For a claim to be cognizable under §2255, the petitioner must have raised the claim on direct appeal; "[a]ny claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." <u>Delatorre v. United States</u>, 847 F.3d 837, 843 (7th Cir. 2017) (citing <u>Hale v. United States</u>, 710 F.3d 711, 713-14 (7th Cir. 2013)). The Seventh Circuit generally allows a petitioner to raise an ineffective assistance of counsel claim for the first time in a §2255 motion "regardless of whether the petitioner could have raised the claim on direct appeal." <u>Id.</u> at 845 (quoting <u>Gaylord v. United States</u>, 829 F.3d 500, 506 (7th Cir. 2016)). Although he would not be procedurally barred from raising ineffective assistance of counsel in this petition, the petitioner raised three

5

additional claims that appear to be procedurally defaulted (that is, claims that he did not raise on appeal in the first instance). That said, procedural default "is an affirmative defense that the State is obligated to raise and preserve, and consequently one that it can waive." Perruquet v. Briley, 390 F.3d 505, 515 (7th Cir. 2004) (citation omitted). At the screening stage, the respondent has not had the opportunity to decide whether to raise the affirmative defense of procedural default. The court will not deny the motion based on the petitioner's procedural default.

B. Petitioner's Plea Bars §2255 Motion

In his plea agreement, the petitioner waived his right to appeal his conviction and his right to challenge his conviction or sentence in any post-conviction proceeding, including a §2255 motion. In signing the written plea agreement, the petitioner made the following waiver:

> Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statutes or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statutes or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

6

Criminal Case, Dkt. No. 69 at 12. During the plea hearing, the petitioner acknowledged that he was giving up his right to appeal. Id., Dkt. No. 122 at 45, lines 18-23. The petitioner further acknowledged that he was giving up his right to appeal whatever sentence the court imposed. Id. at 46, lines 4-8.

The Seventh Circuit has "never been reluctant to hold criminal defendants to their promises." Roberts v. United States, 429 F.3d 723, 724 (7th Cir. 2005). Case law establishes that a petitioner may waive both the right to direct appeal and the right to collaterally attack his conviction. See Solano v. United States, 812 F.3d 573, 577 (7th Cir. 2016) (finding a defendant may, in a plea agreement, waive his right to both direct appeal and collateral attack). There are a few, limited due process exceptions to the general enforceability of appellate waivers; even if a defendant has signed such a waiver, he retains the right to appeal or challenge

> (1) a sentence based on constitutionally impermissible criteria, such as race; (2) a sentence that exceeds the statutory maximum for the defendant's particular crime; (3) deprivation of some minimum of civilized procedure (such as if the parties stipulated to trial by twelve orangutans); and (4) ineffective assistance of counsel in negotiating the plea agreement.

United States v. Adkins, 743 F.3d 176, 192-93 (7th Cir. 2014) (internal quotation marks omitted) (quoting United States v. Bownes, 405 F.3d 634, 637 (7th Cir. 2005)).

The petitioner has **not** argued that he was punished in excess of the statutory maximum. He couldn't make that argument because the court imposed a sentence well below the twenty-year statutory maximum for a Hobbs

7

Act robbery and the lifetime maximum sentence for a §924(c) violation.[2] The petitioner has **not** argued that the court based his sentence on any constitutionally impermissible factor, such as race. The petitioner has **not** argued that his attorneys were ineffective in the negotiation of the plea agreement or that he entered into the plea agreement involuntarily. All his arguments fall within the scope of the waiver with one possible exception: that his attorney was ineffective at sentencing.

The plea agreement prohibits the petitioner from making a collateral challenge based on all but that one argument.

C. Ineffective Assistance of Counsel

The waiver in the plea agreement carves out an exception for a defendant to raise a challenge that his attorneys provided ineffective assistance in connection with the sentencing. The petitioner argues that his counsel was ineffective in failing to ask for the mandatory minimum of eighty-four months.

To prevail on a claim of ineffective assistance of counsel, a defendant must show: 1) that his counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and 2) that he was prejudiced by the deficiencies in his counsel's performance, meaning that there is a reasonable probability that the results of the proceeding would have been

---

[2] The statutory maximum sentences are recounted in paragraph 6 of the plea agreement. Criminal Case, Dkt. No. 69, ¶6. The court sentenced the defendant to thirty-six months (three years) on the Hobbs Act counts (seventeen years below the statutory maximum) and eighty-four months (seven years) on the §924(c) count (the statutory mandatory minimum). Criminal Case, Dkt. No. 79. The combined sentence of 120 months (ten years) is ten years less than the statutory maximum for the Hobbs Act counts alone.

8

different with effective representation. Strickland v. Washington, 466 U.S. 668, 688 (1984). As to the first prong, the petitioner must establish that counsel's performance "fell below an objective standard of reasonableness" resulting in a failure to function "as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687–88. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the "wide range" of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (citing Strickland, 466 U.S. at 689). "This means identifying acts or omissions of counsel that could not be the result of professional judgment." Sussman v. Jenkins, 636 F.3d 329, 349 (7th Cir. 2011) (internal quotation marks and citations omitted).

Even if a petitioner shows that his counsel's performance fell below an objective standard of reasonableness, he still must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]'" Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Williams v. Taylor, 529 U.S. 362, 394 (2000) (endorsing the legal standard articulated by the trial judge).

The petitioner has not established either prong of the Strickland test. The law requires that the court had to impose the seven-year mandatory minimum sentence for the §924(c) charge to which the petitioner pled guilty to run consecutively to any other sentence the court imposed (and the petitioner pled

9

guilty to three other counts). At the plea hearing, the court stated that the seven-year mandatory minimum sentence "ha[d] to be consecutive, on top of, any other sentence," and the petitioner acknowledged that he understood. Criminal Case, Dkt. No. 122 at 36, lines 14-23.

Under the U.S. Sentencing Guidelines, the petitioner's offense level for the Hobbs Act robberies was 26; he had 9 criminal history points, resulting in a criminal history category of IV. Id., Dkt. No. 78 at 2. This yielded an advisory guideline range of 92 to 115 months (seven and a half years to nine years seven months) for the Hobbs Act robberies alone. Because the law required the court to impose the seven-year mandatory minimum sentence for the §924(c) count *consecutively* with any sentence it imposed on the Hobbs Act robbery counts, adding the seven-year mandatory minimum sentence to the top and bottom of the Hobbs Act guideline range resulted in a total range of 176 to 199 months (fourteen years to sixteen years seven months) with an eighty-four month (seven year) statutory floor. Id. So—when the sentencing hearing began, the petitioner was facing a Guideline sentence of anywhere from seven years (the mandatory minimum on the gun charge, with no sentence on the robbery charges) to 199 months (sixteen years seven months).

The petitioner's attorney filed a sentencing memorandum and vigorously argued for a 120-month—ten year—sentence, which was well below both the statutory maximums and the combined guideline range for robbery and §924(c). Criminal Case, Dkt. No. 74. At sentencing, the prosecutor emphasized that the two completed armed robberies and one attempted armed robbery

10

were "extraordinarily serious offenses." Id., Dkt. No. 123 at 12, lines 1-4. She asked for a sentence "at the lowest end of [the petitioner's] guidelines, 176 months." Id. at 18, lines 9-10. The petitioner's attorney highlighted several mitigating factors, emphasizing the petitioner's need for programming and asking for a below-guideline sentence "for true rehabilitation to get [the petitioner] into . . . programs within a reasonable timeframe." Id. at 26, lines 22-24. Counsel cited the U.S. Sentencing Commission in support of the petitioner's position that the 120-month sentence would provide "the baseline necessary for the recidivism rate to decrease almost up to 30 percent." Id. at 26-27.

When imposing sentence, the court discussed how the offense conduct had caused significant trauma to the victims;. the court pointed out that the store employees—with guns pointed at them—likely wondered whether they would ever see family again or whether they would die on the floor of the T-Mobile store. Id. at 33, lines 15-19. The court explained that the second and third robberies traumatized employees and customers, too. Id. at 34, lines 14-16. The court said:

> So you traumatized multiple people. You took away from them their sense of security. You took away from them their sense of being able to just do their jobs, jobs that they were doing legally and lawfully.

Id., lines 22-25. The court recounted that the investigation into the robberies culminated in a standoff, putting officers at risk. Id. at 35, lines 6-23. The court took issue with the petitioner's statement to the victims because the petitioner said that the victims were in the wrong place at the wrong time; the

11

court told the petitioner that *he* was the one in the wrong place at the wrong time. Id. at 37, lines 6-17. The court told the petitioner that he had made the choice to go into the stores, brandish a gun, and terrify innocent people. Id. at 38, lines 1-3. The court said:

> So having said all that, you know, what is the appropriate sentence here that takes into account the extreme seriousness of these offenses and the impact that they had on the victims, that takes into account the fact that in the early part of your life, you had some good opportunities but those opportunities wasted away and you landed in a place that's not healthy for you or your family it sounds like. That all of that led to you doing things that were extremely unhealthy for yourself between your drug use and your criminal activity, but that you also have a lot of potential.

Id. at 41. The court explained on the record,

> I could if I wanted to give you a mandatory minimum sentence of seven years. I have that authority. I believe that would be a dereliction of my duty as a [j]udge given the nature of these three robberies and the stand off that occurred after and the build up that came before.

Id. at 43. The court imposed a total sentence of ten years—"[s]even years on the gun charge, three years concurrent on the robbery charges but consecutive to the seven years"— the sentence recommended by the petitioner's counsel. Id., lines 18-21.

Given the severity of the offense, the court's statements on the record that it would not impose the mandatory minimum sentence, the consecutive nature of the sentence for the gun charge and the resulting guideline range, the fact that the petitioner's attorney requested and secured for his client a significantly below-guidelines sentence of 120 months did not fall below an objective standard of reasonableness and did not result in prejudice. In fact, it

12

is arguable that if defense counsel had argued for a seven-year sentence, the court would have viewed that request as unreasonable. Asking for a robbery sentence that was *four and a half years* below the low end of the robbery guideline range was not, in any way, objectively unreasonable.

Even if counsel's request had been objectively unreasonable (and it was not), the petitioner has not demonstrated a reasonable probability that, but for counsel's (alleged) errors, the result of the proceeding would have been different. The record shows that the court was aware of its authority to impose the mandatory minimum sentence on the gun charge without any additional sentence on the robbery charge. It explained why it declined to exercise that authority. As the court's statements show, if defense counsel *had* argued for the mandatory minimum, the court was extremely unlikely to have followed that recommendation (and may have concluded that neither the petitioner nor defense counsel acknowledged the serious and traumatic nature of the robberies).

The petitioner waived his right to appeal and his right to file a §2255 *habeas* motion. The only possible exception to these waivers is his argument that his counsel provided ineffective assistance by failing to ask for a lower sentence, and that argument has no merit. The court will deny the motion and dismiss this case.

### IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." A court may issue a certificate only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 673, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because reasonable jurists could not debate that the petitioner is not entitled to relief under 28 U.S.C. §2255.

## V. Conclusion

The court **DENIES AS MOOT** the petitioner's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. §2255. Dkt. No. 1.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 13th day of May, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**